SUPREME COURT : COUNTY OF NEW YORK

IAS 13

- - - - - - - - - - - - - - - - - - - - - -X

FEDERAL INSURANCE COMPANY; LLOYDS UNDER-
WRITERS; SPHERE INSURANCE CO. LTD.; DRAKE
INSURANCE CO. LTD.; SPHERE INSURANCE COM.
LTD "B" A/C; THREADNEEDLE INSURANCE CO.
LTD. ANDREW WEIR INSURANCE CO. LTD.D"
ENGLISH & AMERICAN INSURANCE CO. LTD.;
NIPPON FIRE & MARINE INSURANCE CO. (U.K.)
LTD.; NORWICH UNION FIRE INSURANCE SOCIETY
LTD. "TRUST"; NORWICH UNION FIRE INSURANCE
SOCIETY LTD. "X" A/C "TRUST"; BRITISH
LAW INSURANCE CO., LTD. NO. 2 A/C;
BISHOPGATE INSURANCE CO. LTD. "F"A/C;
BISHOPGATE INSURANCE CO. LTD. "F"A/C;
BRITISH LAW INSURANCE CO. LTD.,; OCEAN
MARINE INSURANCE CO. LTD.; PHOENIX
ASSURANCE CO. LTD.; PRUDENTIAL ASSURANCE
CO. LTD. "TRUST" A/C; INDEMNITY MARINE
ASSURANCE CO. LTD. "T" A/C; SOVERIGN
MARINE & GENERAL INSURANCE CO. LTD.; THE
TOKIO MARINE & FIRE INSURANCE CO. (U.K.)
LTD.; TAISHO MARINE & FIRE INSURANCE CO.
(U.K.)LTD.; STOREBRAND INSURANCE CO. (U.K.)
LTD.; ATLANTIC MUTUAL INSURANCE CO.; and
ALLIANZ INTERNATIONAL INSURANCE CO. LTD.,

         Plaintiffs,

- against -        Index 20822/85

GERASSIMOS VIENIERIS, a/k/a "MIKE VINIERIS",
a/k/a "CAPTAIN MIKE", a/k/a "CAPTAIN MIKE G.
VINIERIS", a/k/a "MIKE G. VINIERIS" a/k/a
" CAPTAIN MIKE VINIERIS", a/k/a "CENTURY
SHIPPING LINES CO., INC." a/k/a "DEBORAH H.
VINIERIS", a/k/a "PINELOPI BARBATI", CENTURY
SHIPPING LINES CO., INC., DEBORAH H. VINIERIS,
and PINELOPI BARBATI,

         Defendants.

- - - - - - - - - - - - - - - - - - - - - -X

STECHER, J.:

    Motions numbered 9 and 10 of March 13, 1986 are
consolidated for disposition.

    In motion #9, which is unopposed, plaintiffs
Federal Insurance Co., et al, seek an order discharging
a bond in the amount of $100,000 which had been obtained
in August 1985 in connection with a temporary restraining
o9rder. Subsequently, an order of attachment against the

property of defendant Gerassim Vinieris was obtained which provided for an increase in the undertaking of $150,000. Since plaintiffs have obvtained a new bond in that amount, the earlier undertaking, Bond No. 8110-49-02, issued by Vigilant Insurance Company shall be discharged.

In motion #10, plaintiffs move for summary judgment [CPLR 3212] on the ground that defendant is collaterally estopped from denying liability and damages in this action for conversion and unjust enrichment, by reason of his criminal conviction for the acts alleged in plaintiffs' complaint. Plaintiffs also seek the imposition of a constructive trust upon various bank accounts maintained by defendant.

On December 12, 1982, a robbery took place on the premises of Sentry Investigation Corp. and Sentry Armored Courier Corp. (Sentry). Plaintiffs are insurance companies who reimbursed Sentry's customers for the losses, totalling in excess of $10 million, and were assigned all of the customers rights and claims arising from the theft.

On March 7, 1985, after a four week trial in the United States District Court for the Southern District of New York, defendant Vinieris was convicted of conspiracy, interstate transportation of stolen property, and making false statements to government officials, arising out of his poarticipation not in the robbery itself, but in subsequent related events. Specifically, he was charged in the indictment with and ultimately convicted of:

1. Conspiracy to conceal some of the stolen cash by picking up "two footlockers containing funds stolen from Sentry" from a residence in Queens on or about February 10, 1983 and transporting them to his own apartment in Brooklyn, which trunks had been delivered to the Queens location after the robbery by one Eddie Argitakos, a participant in the robbery;

2. Further transporting, in interstate commerce, to his new apartment in New Jersey, "a trunk containing an aggregate value in excess of $5,000" of the stolen funds; and

3. Making false statements to FBI agents by telling them that in excess of $169,000 recovered from his New Jersey apartment was "proceeds involving a rice

-2-

transaction and that he received the money when he picked up one green trunk at a house in Queens."

Plaintiffs seek damages of $3.3 million which is the amount Eddie Argitakos testified was contained in the two footlockers. Defendant asserts that different issues were litigated in the criminal action than are asserted in the instant claim, that the amount of money he actually received was never established, and that therefore he should not be collaterally estopped from denying either liability or the amount of damages. Defendant also requests a stay pending appeal of his conviction based on new evidence, which purportedly suggests that he was "set up" by one of the actual robbery participants to take the blame for the $3.3 million.

Application of the doctrine of collateral estoppel requires that the issue sought to be precluded be identical to the issue decided in the prior proceeding, that the issue has been necessarily decided in the prior proceeding, and that defendants have had a full and fair opportunity to litigate the issue in the prior proceeding [Gilberg v Barbieri, 53 NY 2d, 285,291]. That Mr. Vinieris had a full and fair opportunity to litigate the issues decided in the prior proceeding is not in question; he was convicted after trial and the conviction was upheld on appeal.

The aforementioned convictions for receipt of, and for transportation of the stolen funds, each suffices to estop defendant collaterally from denying liability for conversion, the first cause of action, which requires "an unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights" [23 NY Jur 2d, Conversion, §1,p.207; and see Davis v Hanna, 97 AD 2d, 943,944].

With respect to the damages claimed in the first and second causes of action, plaintiffs seek $3.3 million on the basis of the undisputed testimony of co-conspirator Argitakos of defendant's criminal trial, that immediately

-3-

after the robbery he placed approximately that amount*
in the two footlockers defendant was convicted of receiving
and that those trunks remained locked in the Queens
basement of a third party, Gabriel Iakoridis, until
defendant picked them up.

    Plaintiffs' assertion that defendant is
collaterally estopped from denying receipt of the
$3.3 million figure is mistaken, because the amount
of money contained in the footlockers was not an
issue necessarily decided in the prior proceeding.
He was convicted of receiving an indeterminate amount
of money, i.e. "two footlockers containing funds
stolen from Sentry," and of transporting "a trunk
containing an aggregate value in excess of $5,000.00."
No greater precision with respect to the amount
actually received was necessary to convict him, and
thus he could only be estopped from denying receipt
of $5,000.

    However, Mr. Argitakos' undisputed testimony,
coupled with Mr. Vinieris' conviction for receipt of those
two trunks, not denied in any affidavit made by the defendant,
does serve to establish plaintiffs' prima facie right
to recover the amount sought. It is incumbent upon
defendant to come forth with evidence, even a denial,
that the trunks contained the stated amount [Indig
v Finkelstein, 23 NY 2d, 728].

    Defendant has always maintained that he
received only one footlocker, containing less than
$500,000 which had been separated from the other

---

*Defendant does not dispute that reasonable evidence
of the amount of damages will suffice, particularly,
where, as here, the tort in question is of such a
nature as to prevent ascertainment of the precise
amount [National Conversion Corp. v Cedar Building
Corp., 23 NY 2d, 621,630; Story Publishing Co, v Paterson
Parchment Paper Co., 282 US 555,563] much of the
money stolen in the Sentry robbery remains unaccounted
for.

two on the night of the robbery and was not stored in Mr. Iakoridis' basement. In support he includes selections from Mr. Argitakos' testimony admitting the existence of a third trunk, that had been filled with approximately $500,000 on the night of the robbery, and that had been hidden in a different location from the others. Also included is a selection from Mr. Iakoridis' testimony demonstrating that he was unable to identify Mr. Vinieris as the man who came to his home to pick up the two larger trunks.

However, this evidence is entirely beside the point. As indicated above, defendant was charged in the first count of the indictment with, and was convicted of taking the two trunks from Mr. Iakoridis' basement. Therefore, he is estopped from denying receipt of them. No affidavit from defendant or any other person with knowledge has been submitted to contradict plaintiffs' evidence as to the amount contained in those trunks. Nor was any proof submitted to support defendant's attorney's allegation that new evidence exists demonstrating that Mr. Vinieris was "framed" by one of the actual robbery participants to take the blame for the missing millions. As an attorney's hearsay affidavit, lacking personal knowledge of the facts alleged, is without probative value [Zuckerman v City of New York, 49 NY 2d, 557], defendant has failed to raise a triable issue precluding summary judgment as to the amount of damages.

The third cause of action names as defendants, Mr. Vinieris' mother (a non-resident alien domiciled in Greece), his wife (who apparently lives in Texas), Century Shipping Lines Co., a New York corporation wholly owned and controlled by Mr. Vinieris, and Mr. Vinieris himself under various other appellations, such as "Captain Mike G. Vinieris," under which defendant operated. Plaintiffs seek to have a constructive trust impressed upon 10 Citibank accounts in defendants names, and upon any other monies in the care, custody or control of defendants which represent proceeds from the robbery or which, if in altered form, are traceable to proceeds from the robbery [cf CPLR Art 13A]:

-5-

"A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee" [Beatty v Gugganheim Exploration Co., 225 NY 380, 386; see Simonds v Simonds, 45 NY 2d, 233, 241].

Documentary evidence adduced at the criminal trial and submitted here demonstrates that between February 9 and June 10, 1983, the time Mr. Vinieris picked up the footlockers, to the time he was first questioned by the FBI, he deposited in excess of $500,000 in the named accounts and certificates of deposit. The record contains compelling circumstantial evidence to support plaintiffs' assertion that the money in defendant's accounts represents proceeds from the robbery.

Defendant's attorney contends that approximately three-fifth of that money represents profits defendant earned in his commodities business during the previous year. Again, however, no evidence has been submitted to support this proposition, and thus no triable issue has been raised with respect to the sale or, or plaintiff's equitable interest in, defendant's Citibank accounts.

Accordingly, for the reasons set forth above, plaintiffs' motion for summary judgment is granted in its entirety.

Settle Order.

Dated: June 24, 1986                          _____ J.S.C.